UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

VIRGIL GRIFFIN,                          )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )        No. 1:19-cv-04440-JPH-MJD
                                         )
JERRY HOLMES, et al.                     )
                                         )
                    Defendants.          )

**Order Denying Plaintiff's Motion for Summary Judgment
and Granting Defendant Conyers's Cross-Motion for Summary Judgment**

Plaintiff Virgil Griffin, an inmate currently incarcerated at Pendleton Correctional Facility ("Pendleton"), filed this 42 U.S.C. § 1983 action alleging that the defendants violated the Eighth Amendment by exhibiting deliberate indifference to his serious medical needs. Mr. Griffin has moved for summary judgment against one defendant, Christina Conyers, and Ms. Conyers has filed a cross-motion for summary judgment. These motions are now ripe for decision. For the reasons explained in this Order, Mr. Griffin's motion for summary judgment is **denied** and Ms. Conyers's motion for summary judgment is **granted**.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that the movant is entitled to judgment as a matter of law because there is no genuine dispute as to any material fact. *See* Fed. R. Civ. P. 56(a). A party must support any asserted undisputed (or disputed) fact by citing to specific portions of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party may also support a fact by showing that the materials cited by an adverse party do not establish the absence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations

1

must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4).

In deciding a motion for summary judgment, the only disputed facts that matter are material ones—those that might affect the outcome of the suit. *Williams v. Brooks*, 809 F.3d 936, 941–42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3).

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

## II. Facts

The following statement of facts was evaluated pursuant to the standards set forth above. The facts are considered undisputed except as otherwise noted.

At a routine chronic care visit on August 30, 2019, Dr. Talbot prescribed breathing treatments for Mr. Griffin to treat his asthma. Dkt. 50-1 at 9. The prescription, which started on August 30, 2019 and expired on October 31, 2019, stated that the breathing treatments could happen one to two times daily as needed. *Id.* at 12. As set forth in greater detail below, Mr. Griffin alleges that he requested, but did not receive, breathing treatments on several occasions between September 14 and September 25, 2019. And while he filed grievances after each incident with a health services administrator, Ms. Conyers was not aware of any of Mr. Griffin's grievances or the allegations set forth in them until September 26, 2019.

**A. Grievances Filed with Health Services Administrator Frye**

Mr. Griffin requested, but did not receive, a breathing treatment on the evening of September 14, 2019. *Id.* at 1. He submitted an informal grievance about this incident to Health Services Administrator ("HSA") Linda Frye, and she responded that she would discuss the incident with the nurse. *Id.* at 13.

On September 18, 2019, Mr. Griffin again requested, but did not receive, a breathing treatment.[1] Dkt. 50-1 at 15. He filed an informal grievance about this incident with HSA Frye on September 19. *Id.* Her response was that the nursing staff "get[s] really busy on both shifts," and she suggested that Mr. Griffin have a captain or lieutenant "call medical or just bring [Mr. Griffin] over." *Id.*

On September 20, 2019, Mr. Griffin again requested, but did not receive, a breathing treatment. Dkt. 50-1 at 2. He filed an informal grievance with HSA Frye on September 21. Dkt. 50-1 at 17. He informed HSA Frye that he was "in pain all night" as a result of not receiving a

---

[1] While Mr. Griffin states in his declaration that the denial happened on September 19, his informal grievance states that the denial occurred on September 18. *Compare* dkt. 50-1 at 2 *with* dkt. 50-1 at 15. This factual discrepancy is immaterial.

breathing treatment. *Id.* HSA Frye said she would discuss the incident with the nurses and informed Mr. Griffin that "changes are coming soon." *Id.*

On September 24, 2019, Mr. Griffin again requested, but did not receive, a breathing treatment. Dkt. 50-1 at 2. Mr. Griffin thereafter filed an informal grievance with HSA Frye. Dkt. 50-1 at 24. The informal grievance was dated September 24, and HSA Frye again responded that she would discuss the issue with the nurse. *Id.*

Finally, Mr. Griffin again requested, but did not receive, a breathing treatment on September 25, 2019. Dkt. 50-1 at 2. As with the other incidents, Mr. Griffin filed an informal grievance with HSA Frye. Dkt. 50-1 at 28. HSA Frye once again responded by agreeing to discuss the issue with the nurse. *Id.*

**B. Grievances Filed with Ms. Conyers**

On September 16, 2019, Ms. Conyers received a formal grievance that Mr. Griffin had filed with her on September 21, 2019, regarding the September 14 incident. Dkt. 62-3. Ms. Conyers assigned this grievance number 109519. *Id.* at ¶ 24. Ms. Conyers is the Offender Grievance Specialist at Pendleton, and her duties include screening and logging grievances, investigating and responding to grievances, and ensuring offender grievance appeals are processed. Dkt. 62-1 at ¶¶ 2, 5.

That same day, Ms. Conyers emailed HSA Frye and another prison official whom Mr. Griffin named in the grievance. *Id.* at ¶ 26; dkt. 62-4. HSA Frye responded to Ms. Conyers's inquiry on September 30, 2019, and stated she would "discuss with nurses regarding breathing treatments" and "also check to see what [Mr. Griffin's] pulmonary function test actually showed." Dkt. 62-4. Ms. Conyers thereafter responded to grievance 109519 on October 2, 2019, informing Mr. Griffin

that she could provide no further relief. Dkt. 50-1 at 14; dkt. 62-5. Mr. Griffin unsuccessfully appealed grievance 109519. Dkt. 50-1 at 14.

Mr. Griffin filed a formal grievance related to the September 20 incident on September 28, 2019. Dkt. 50-1 at 19. Ms. Conyers received this grievance on October 3, 2019, which is after she had responded to grievance 109519. *Id.* She rejected and returned this grievance to Mr. Griffin on October 7, 2019. *Id.* at 18. The reason for the rejection was that the issue had already been addressed in grievance 109519. *Id.*

Mr. Griffin filed a formal grievance about the September 24 incident with Ms. Conyers on September 31, 2019, dkt. 50-1 at 26, and she received it on October 3, 2019, *id.* at 25. That same day, she rejected and returned the grievance to Mr. Griffin finding that the issue had already been addressed in grievance 109519. *Id.* She also warned Mr. Griffin that "[a]ny further correspondence pertaining to this issue will be simply returned." *Id.*

On October 3, 2019, Mr. Griffin filed a formal grievance about the September 25 incident with Ms. Conyers. Dkt. 50-1 at 30. Ms. Conyers received the formal grievance on October 4, and she rejected and returned it to Mr. Griffin the same day. Dkt. 50-1 at 29. She again found that the issue had already been addressed by grievance 109519. *Id.*

### III. Analysis

Mr. Griffin asserts that Ms. Conyers displayed deliberate indifference to his serious medical needs when she returned as duplicative the formal grievances about the denial of breathing treatments on September 19, September 20, September 24, and September 25. Mr. Griffin argues that each incident was proper grounds for a separate grievance. Dkt. 31 at 9. He asserts claims against Ms. Conyers in both her individual and official capacities. Mr. Griffin has filed a motion

for summary judgment on his claims against Ms. Conyers, dkt. 49, and she has filed a cross-motion for summary judgment. Dkt. 63.

### A. Official Capacity Claim

An official capacity suit "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978); *see also Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Therefore, a suit against an officer of a state agency in her official capacity is a suit against the state, and the state is not a "person" subject to suit under 42 U.S.C. § 1983. *Kolton v. Frerichs*, 869 F.3d 532, 535 (7th Cir. 2017); *Foreman v. Wadsworth*, 844 F.3d 620, 624 n.1 (7th Cir. 2016) ("A state official in his or her official capacity is not deemed a 'person' under § 1983."). Consequently, Mr. Griffin cannot assert a claim for monetary damages against Ms. Conyers in her official capacity.

In his claim against Ms. Conyers in her official capacity, Mr. Griffin also seeks a "permanent injunction ordering defendants named above to cease their deliberate indifference to doctor-prescribed medical treatment." Dkt. 31 at 10. To obtain a permanent injunction, a plaintiff must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

Here, Mr. Griffin cannot show that the remedies available at law are inadequate to compensate for his alleged injury. While it is undisputed that Dr. Talbot prescribed breathing treatments in August 2019 to treat Mr. Griffin's asthma, Mr. Griffin has not designated evidence showing that he is currently in need of breathing treatments. In fact, Mr. Griffin's prescription for

breathing treatments has a "stop date" of October 31, 2019. *See* dkt. 50-1 at 12. Mr. Griffin also has not designated evidence of, or even alleged, ongoing and potential future harm. Consequently, money damages are adequate to compensate Mr. Griffin for the injury he alleges to have suffered when he did not receive prescribed breathing treatments in September and October of 2019. *See Vaughn v. Walthall*, 968 F.3d 814, 824–25 (7th Cir. 2020).

For the foregoing reasons, Mr. Griffin's partial motion for summary judgment is **denied** insofar as he seeks to hold Ms. Conyers liable in her official capacity. Ms. Conyers's motion for summary judgment is **granted** with respect to Mr. Griffin's claims against her in her official capacity.

### B. Individual Capacity Claim

Mr. Griffin also asserts a claim against Ms. Conyers in her individual capacity. Because Mr. Griffin is a convicted prisoner, his medical treatment is evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

The Eighth Amendment "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain." *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014). "To determine if the Eighth Amendment has been violated in the prison medical context, [the Court] perform[s] a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc).

"[D]eliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or 'turn[s] a blind eye' to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (quoting *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996)). An inmate's correspondence to a prison official may provide sufficient knowledge of a constitutional deprivation. *Id.* at 781-82. "[O]nce an official is altered to an excessive risk to inmate safety or health through [an inmate's] correspondence, refusal or declination to exercise the authority of his or her office may reflect deliberate disregard." *Id.* at 782.

In contrast, if, upon learning of an inmate's complaints, a prison official reasonably responds to those complaints, she lacks a "sufficiently culpable state of mind" to be deliberately indifferent. *See Johnson v. Doughty*, 433 F.3d 1001, 1010–11 (7th Cir. 2006) (finding grievance counselor did not violated the Eighth Amendment where he researched inmate's complaint, learned that medical professionals had seen and diagnosed inmate with medical condition and determined that surgery was not required); *Burks v. Raemisch*, 555 F.3d 592, 594–95 (7th Cir. 2009) (affirming grant of summary judgment to prison complaint examiner who denied grievance as untimely "because she carried out her job exactly as she was supposed to"); *see also Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002) ("Even if he recognizes the substantial risk [to an inmate's health or safety], an official is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 (1994)).

Here, Ms. Conyers is entitled to summary judgment because the undisputed facts establish that she reasonably responded to Mr. Griffin's grievances. After receiving Mr. Griffin's first formal grievance on September 26, 2019, Ms. Conyers immediately emailed HSA Frye and another prison official named in the grievance to investigate Mr. Griffin's complaint. Dkt. 62-4. She asked for

timely responses because the matter was time sensitive. *Id.* HSA Frye responded that she would speak with the medical staff and review Mr. Griffin's medical records to determine what action was necessary. *Id.* Relying on HSA Frye's response, Ms. Conyers informed Mr. Griffin that she could provide no additional relief. Dkt. 62-5. Thus, like the grievance counselor in *Johnson*, Ms. Conyers reviewed Mr. Griffin's complaint, investigated it, and responded to him. She did not exhibit deliberate indifference with respect to Mr. Griffin's first grievance. *See Johnson*, 433 F.3d at 1010–11.

Mr. Griffin contends, however, that Ms. Conyers exhibited deliberate indifference with respect to his subsequent grievances by rejecting them as duplicative. Dkt. 50 at 7-8. Although it is undisputed that prison officials denied breathing treatments for Mr. Griffin on multiple occasions, the incidents described in Mr. Griffin's grievances occurred before Ms. Conyers received his first grievance on September 26, 2019. *See* dkt. 50-1 (identifying incidents of being denied breathing treatments on September 14, September 19, September 20, September 24, and September 25). Similarly, HSA Frye's statement that she would investigate the denial of breathing treatments and review Mr. Griffin's medical records came after all of the refused breathing treatments. *See* dkt. 62-4 (HSA Frye's response to Ms. Conyers's email is dated September 30, 2019). The record further establishes that Ms. Conyers received and responded to all of Mr. Griffin's subsequent formal grievances within approximately three days of issuing her response to Mr. Griffin's first formal grievance. *See* dkt. 62-1 at ¶¶ 38-41.

Considering all this evidence, Ms. Conyers reasonably responded to Mr. Griffin's subsequent formal grievances. Because Ms. Conyers received Mr. Griffin's subsequent formal grievances within days of communicating with HSA Frye concerning Mr. Griffin's first formal grievance, it was reasonable for Ms. Conyers to rely on HSA Frye's representations that she would

speak to medical staff about Mr. Griffin's breathing treatments and review his medical records. There was no need for Ms. Conyers to repeat her inquiry to HSA Frye concerning the separate incidents that occurred after the first formal grievance because those separate incidents also occurred before Ms. Conyers initially communicated with HSA Frye.

The undisputed evidence establishes that Ms. Conyers reasonably responded to first formal grievance submitted by Mr. Griffin by communicating with HSA Frye concerning the incident and relying on HSA Frye's representations that she would speak to medical staff and review Mr. Griffin's medical records. Ms. Conyers also reasonably denied Mr. Griffin's subsequent formal grievances as repetitive, even though these grievances identified separate incidents, because these incidents occurred prior to Ms. Conyers's communication with HSA Frye and Ms. Conyers received the subsequent formal grievances within days of issuing her response to Mr. Griffin's first formal grievance. Ms. Conyers neither "refus[ed] or declin[ed] to exercise the authority of [] her office," *Perez*, 792 F.3d at 782, nor "intervened to prevent the medical unit from delivering needed care," *Burks*, 555 F.3d at 595. She therefore is entitled to judgment as a matter of law. Consequently, Mr. Griffin's motion for partial summary judgment is **denied**, and Ms. Conyers's cross-motion for summary judgment is **granted**.

## IV. Conclusion

For the reasons set forth above, Mr. Griffin's motion for partial summary judgment, dkt. [49], is **denied**. Ms. Conyer's cross-motion for summary judgment, dkt. [63], is **granted**.

No partial judgment shall issue at this time as Mr. Griffin's claims against defendants Holmes, Morris, Heatherly, Tremble, Davis, White, and Loveall remain pending. The **clerk is directed** to terminate Christina Conyers as a defendant on the docket.

10

**SO ORDERED.**

Date: 3/18/2021

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

VIRGIL GRIFFIN
998996
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

All Electronically Registered Counsel